***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All parties are properly before the undersigned Deputy Commissioner and that the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Worker's Compensation Act at the time of the alleged occupational disease.
4. An employer/employee relationship existed between the parties at the time of the alleged injury and/or occupational disease.
5. The employer in this case is Cumberland County Schools and the carrier and/or claims administrator liable on the risk is National Benefits America.
6. Plaintiff began missing work from an alleged occupational disease on or about March 18, 2002.
7. The parties amended or modified their Pre-trial Agreement, marked as Stipulated Exhibit #1, and stipulated on the day of the hearing that plaintiff's average weekly wage was $547.62, yielding a compensation rate of $365.11. The parties properly initialed their changes to the Pre-Trial Agreement.
8. The nature of the alleged injury or occupational disease is bilateral carpal tunnel syndrome.
9. The parties stipulated into evidence as Stipulated Exhibit #1, the Pre-trial Agreement, as modified and properly initialed by the parties.
10. The parties stipulated into evidence as Stipulated Exhibit #2, a packet of documentation, consisting of Exhibits A through D.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained in the depositions of James A. Lowe, M.D., and Louis P. Clark, M.D., are ruled upon in accordance with the applicable rule of law and the Opinion and Award in this case.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Defendant-employer Cumberland County School System is the public school system of Cumberland County, North Carolina.
2. On the date of the hearing before the Deputy Commissioner, plaintiff was 44 years old and resided in Fayetteville, North Carolina. Plaintiff had a high school education and had spent four years in the U.S. military.
3. Plaintiff became employed by defendant-employer on August 11, 1992, as a temporary custodian, he worked in that position for a year and a half. On April 11, 1994, plaintiff was hired by defendant-employer as an HVAC apprentice.
4. Plaintiff's position, HVAC Apprentice II, requires one to assist with the installation, maintenance and service of all HVAC (heating ventilation and air conditioning) systems in the schools.
5. The physical requirements for the position of HVAC Apprentice II are occasional lifting of up to 100 pounds, frequent lifting up to 50 pounds, and constant lifting up to 25 pounds, as well as the ability to climb ladders and crawl through crawl-spaces. The position requires the use of a variety of hand-held tools and equipment, a lot of heavy lifting, pulling, and pushing. The specific job duties vary from day to day.
6. Plaintiff began experiencing pain and discomfort in his hands in March 2002. Prior to this time, plaintiff had not experienced any problems with his hands.
7. Plaintiff visited his family doctor, Dr. Carl A. Foulks, for problems with hand pain on May 27, 2002. Dr. Foulks diagnosed plaintiff with bilateral carpal tunnel syndrome.
8. Plaintiff continued to receive treatment for bilateral carpal tunnel syndrome with Dr. Foulks through December 5, 2002, during which time he treated with Dr. Foulks on nine occasions.
9. Plaintiff underwent a nerve conduction velocity study on May 31, 2002, by Professional Diagnostic Services, Inc. The results indicated bilateral carpal tunnel syndrome and evidence for bilateral proximal ulnar neuropathy. Additional nerve conduction velocity studies were performed by Professional Diagnostic Services, Inc., on September 20, 2002, and December 9, 2003. The results of those studies also indicated bilateral carpal tunnel syndrome.
10. In addition to Dr. Foulks, plaintiff was seen by Physician Assistant Donald A. Whitmore of U.S. Healthworks Medical Group on June 18, 21, and 27, 2002, for bilateral wrist pain and numbness. P.A. Whitmore gave plaintiff work restrictions of no lifting more than twenty pounds, no forceful pushing or pulling, no climbing ladders, and no repetitive hand/wrist motion. P.A. Whitmore also diagnosed plaintiff with bilateral carpal tunnel syndrome. Plaintiff underwent physical therapy at U.S. Healthworks Medical Group on July 3 and 8, 2002. Plaintiff returned to U.S. Healthworks Medical Group on July 18, 2002, but did not receive treatment because his workers' compensation claim had been denied by defendants.
11. Due to his work restrictions and the unavailability of light-duty work with defendant-employer, plaintiff last worked for defendant-employer on June 17, 2002.
12. On July 8, 2002, plaintiff was referred by Dr. Foulks for a neurological consultation with Dr. R. Ramachandran of Cape Fear Neurology Associates. After a motor examination of plaintiff, Dr. Ramachandran noted a positive Tinel's sign at the elbows bilaterally, and a positive Phalen's sign at the wrist bilaterally. Dr. Ramachandran further noted on examination that plaintiff has bilateral carpal tunnel syndrome, and ulnar nerve compression at the elbows.
13. Plaintiff returned to Dr. Ramachandran on August 1, 2002. Dr. Ramachandran gave plaintiff work restrictions of no pushing, pulling, or lifting weights, and no repetitive movements of the wrists and hands. Dr. Ramachandran believed that plaintiff has a history of moderate to severe bilateral carpal tunnel syndrome. Dr. Ramachandran advised plaintiff to see an orthopaedic surgeon for further evaluation and treatment.
14. On September 17, 2002, plaintiff saw Dr. Louis P. Clark, an orthopedic surgeon with Cape Fear Orthopedic Clinic, for bilateral carpal tunnel syndrome. The medical note from that visit shows that plaintiff had numbness and tingling in both hands, and a positive Phalen's sign bilaterally.
15. Plaintiff returned to Dr. Clark on October 10, 2002, where the results of his latest electrodiagnostic study from Professional Diagnostic Services were compared with those done on May 31, 2002. The findings were virtually unchanged. There was some evidence of demyelination, which indicated mild to moderate carpal tunnel.
16. On November 12, 2002, plaintiff visited Cape Fear Orthopedic Clinic for a pre-operative appointment where the proposed left carpal tunnel release surgery and the associated risks and other issues of the surgery were discussed.
17. Dr. Clark performed a left carpal tunnel release surgery on plaintiff at Fayetteville Ambulatory Surgery Center on November 15, 2002.
18. Plaintiff had his first post-operative visit with Dr. Clark on November 19, 2002.
19. On November 26, 2002, plaintiff returned to Dr. Clark and had his surgical stitches removed.
20. Plaintiff followed up with Dr. Clark on December 10, 2002, three and a half weeks post-surgery. No medications were prescribed, and Dr. Clark wrote plaintiff back to work, with the restriction of no use of the left hand.
21. January 2, 2003, was the last time plaintiff treated with Dr. Clark. Plaintiff still had complaints of soreness in his left hand and could not use his hand normally. Plaintiff remained under the one-handed work restriction and was to see Dr. Clark in one month.
22. On March 12, 2003, plaintiff was referred by Dr. Foulks to Dr. James E. Lowe, an orthopaedic and plastic surgeon, for continued problems with his left hand, which remained numb, weak, and swollen after the left carpal tunnel release surgery by Dr. Clark. Dr. Lowe noted a weakness of the ulnar nerve in both hands; a positive Tinel's sign at the level of the cubital tunnel in both upper extremities; a positive Tinel's sign at the wrist level of both the right and left upper extremities; a positive Phalen's sign in the right upper extremity; a weak positive Phalen's sign in the left upper extremities; and, a positive Finkelstein's test in the right upper extremity. Dr. Lowe noted that plaintiff's clinical examination is consistent with bilateral carpal tunnel syndrome, as well as ulnar and cubital tunnel syndromes. Dr. Lowe recommended surgery on the right upper extremity at the wrist level, and also a release of both the median and the ulnar nerve. Future surgery consisting of the release of the left and right cubital in the upper extremities was also recommended by Dr. Lowe. Plaintiff elected not to have the surgery, but would continue to take anti-inflammatory drugs, wear splints, and follow up with Dr. Lowe in four weeks. Dr. Lowe opined in the medical note that plaintiff's job description, as given to him by plaintiff, contributed significantly to the development of plaintiff's carpal tunnel syndrome.
23. On April 16, 2003, plaintiff returned to Dr. Lowe with continued symptoms of bilateral cubital and carpal tunnel syndromes. Dr. Lowe instructed him to return in four weeks.
24. Plaintiff returned to Dr. Lowe again on May 19, 2003. Dr. Lowe discussed the need for surgery on plaintiff's right hand. Plaintiff was to again return in four weeks.
25. On May 20, 2003, Dr. Lowe responded to written questions from plaintiff's counsel regarding the diagnosis of plaintiff's condition as bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, and synovitis. After reading plaintiff's job description, Dr. Lowe responded in a written letter to plaintiff's counsel that repeated flexion and extension of the wrist was required; that pushing, pulling, and lifting contributed to plaintiff's carpal tunnel syndrome; and that the job could or might have caused the conditions for which he diagnosed and is treating plaintiff. Dr. Lowe also opined to a reasonable degree of medical certainty that plaintiff's job exposed plaintiff to a higher risk of contracting carpal tunnel syndrome as opposed to the general public not so employed. Lastly, Dr. Lowe wrote, to a reasonable degree of medical certainty, that plaintiff's job was a causal factor of his carpal tunnel and cubital tunnel syndromes according to the job description.
26. On June 18, 2003, plaintiff returned to Dr. Lowe for carpal tunnel syndrome treatment, but continued to refuse surgery.
27. Plaintiff returned to Dr. Lowe on November 10, 2003, with continued evidence of bilateral carpal tunnel symptoms. Dr. Lowe noted that there was no improvement since plaintiff's last visit, and that plaintiff was now considering repeat surgery on the left hand. Dr. Lowe instructed plaintiff to return in a month.
28. On December 8, 2003, plaintiff returned to Dr. Lowe. A repeat carpal tunnel release surgery on the left hand was scheduled for December 19, 2003. Dr. Lowe gave Plaintiff a work note stating that plaintiff would be unable to work for nine months. Plaintiff underwent another nerve conduction study on December 9, 2003, which indicated bilateral carpal tunnel syndrome.
29. Plaintiff had a pre-operative appointment with Dr. Lowe on December 15, 2003.
30. On December 18, 2003, at Good Hope Hospital, Dr. Lowe performed a release of the left median nerve, internal neurolysis of the left median nerve, release of the left ulnar nerve, and synovectomy of the flexor tendons within the carpal canal.
31. The deposition testimony of Dr. Clark and Dr. Lowe were taken in this matter. Dr. Lowe opined that plaintiff's job duties with defendant-employer could have caused or significantly contributed to the development of plaintiff's bilateral carpel tunnel syndrome, or aggravated plaintiff's pre-existing condition of bilateral carpel tunnel syndrome. In addition, Dr. Lowe opined that plaintiff's employment duties with defendant-employer placed him at a greater risk of developing bilateral carpel tunnel syndrome as opposed to members of the general public.
32. In contrast, Dr. Clark opined that there was no causal relation to plaintiff's bilateral carpel tunnel syndrome, and that plaintiff's employment duties with defendant-employer did not place him at a greater risk of developing bilateral carpel tunnel syndrome.
33. Upon giving due consideration to the competent evidence of record, including medical evidence, the Full Commission finds that the greater weight of the evidence shows that plaintiff's employment duties with defendant-employer caused or significantly contributed to the development of plaintiff's bilateral carpel tunnel syndrome, or aggravated plaintiff's pre-existing condition of bilateral carpel tunnel syndrome. The Full Commission finds that plaintiff's employment duties with defendant-employer placed him at a greater risk of developing bilateral carpel tunnel syndrome as opposed to members of the general public.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown by the greater weight of the evidence that on or about March 18, 2002, plaintiff's employment duties with defendant-employer caused or significantly contributed to the development of plaintiff's bilateral carpel tunnel syndrome, a compensable occupational disease, or aggravated plaintiff's pre-existing condition of bilateral carpel tunnel syndrome. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff is entitled to temporary total disability compensation at the rate of $365.11 per week from June 18, 2002, until the present and continuing until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have Defendants pay for the medical treatment necessitated by his compensable occupational disease. N.C. Gen. Stat. §§97-2(19) and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability benefits at the weekly rate of $365.11, from June 18, 2002, through the present and continuing until plaintiff returns to work or until further order by the Commission. This compensation is subject to a reasonable attorney's fee as provided herein. The portion of such compensation that has accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable occupational disease so long as such medical treatment tends to effect a cure, give relief, or lessen his period of disability.
3. Defendants shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff herein. The portion of such fee that is based upon compensation that has accrued shall be paid directly to plaintiff's counsel in lump sum; thereafter, plaintiff's counsel shall receive every fourth check of all future compensation due plaintiff.
4. The undersigned retains jurisdiction of this matter regarding any expert witness fees owed and outstanding from testimony of experts given by deposition in this matter. According to a review of the medical depositions taken in this matter, it appears that an expert witness fee has not been submitted concerning the depositions of Dr. James A. Lowe, M.D. and Dr. Louis P. Clark, M.D. Defendants shall submit such outstanding expert witness bill requests for a determination of a reasonable expert witness fee by the undersigned.
5. Defendants shall bear the costs of this proceeding, including the expert witness fees for James A. Lowe, M.D., and Louis P. Clark, M.D., if not already paid by prior order.
This 2nd day of August 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER